UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO 08-61199-CIV-MARRA/JOHNSON

RANDY BORCHARDT, JOE WHITE,
and GREG GISH, on behalf of themselves and
the Plaintiff class,

    Plaintiffs,

v.

MAKO MARINE INTERNATIONAL, INC., et al.,

    Defendants.
_____/

## ORDER AND OPINION ON MOTION TO DISMISS

THIS CAUSE comes before the Court on Defendants, Mako Marine International, Inc. ("Mako"), Tracker Marine Retail, LLC ("Tracker Retail"), TMBC, LLC ("TMBC"), Tracker Marine, LLC ("Tracker Marine"), Bass Pro Group, LLC ("Bass Pro"), and American Sportsman Holdings, Co. ("American Sportsman") (collectively, "Defendants")' Motion to Dismiss (DE 48). Plaintiffs filed an Opposition to Defendants' Motion to Dismiss (DE 51) and Defendants filed a Reply to Plaintiff's Opposition (DE 54). The Court held a hearing on the motion on October 30, 2009. The Court has carefully considered the motion, response, and reply, and is otherwise fully advised in the premises.

**Background**

Plaintiffs filed a Complaint against Defendants on July 29, 2008, which was replaced on September 16, 2008 by a First Amended Complaint and on May 1, 2009 by a Second Amended Complaint. See DE's 1, 3, 38. This is an action to recover damages caused by allegedly defective

1

Mako 28 and Mako 282 vessels manufactured from 1997 and 2001.  The Second Amended Complaint ("Complaint") alleges that Plaintiff Randy Borchardt purchased a used 1999 Mako 282 in 2003, Plaintiff Joe White purchased a used 2000 Mako 282 in 2004, and Plaintiff Greg Gish purchased a 1998 Mako 282 in 2004.  Comp. ¶¶ 1, 2, 3, 22, 27, 32.

According to the allegations of the Complaint, the approximately 216 vessels MAKO 282 and 28 vessels manufactured from 1997 through 2001 (the "boat" or "vessel") have significant structural problems that derives directly from its design. Comp. ¶¶ 17, 19.  Specifically, two feet were added to the 26 foot model without re-engineering the structural support to accommodate the design change. Comp. ¶ 18.  The change in design caused the weight of the outboard engines to place added stress on the hull, which through the ordinary use of the vessel, would cause structural cracking in the transom. Comp. ¶ 18.

As early as 2002, Defendants received notice from customers that the hull was cracking. Comp. ¶ 36.  In 2004, the Coast Guard investigated reports related to cracking in the transom and concluded that the transom extension was not provided with adequate structural support to accommodate the weight of the outboard engines.  Comp. ¶ 38.  The Coast Guard report indicated: "Carried to its ultimate conclusion, the rear two feet will disconnect from the forward part of the hull."  Comp. ¶¶ 37, 38.  In August 2004, the Coast Guard recalled Mako 282 and 28 boats manufactured between 1998-2001, stating "the problem with this boat is not simple gelcoat cracking. There are significant structural problems with this boat that derive directly from design and construction." Comp. ¶ 39.

Defendants addressed the recall by issuing notices to MAKO 282 and 28 owners who had hull warranties advising them that "a small percentage of Mako 282 cc may have experienced

prominent gel coat cracking in the transom area." Comp. ¶ 40. The notice further stated that the Coast Guard had notified them that the inherent design defect causes the vessels to be unseaworthy and places the passengers at risk for personal injury and death, and cannot be adequately repaired. Comp. ¶ 40. Defendants further advised owners that such cracking may be covered by warranty. Comp. ¶ 42. Defendants have not been able to adequately repair the cracking because its origin lies within the overall design of the boat and cannot be fixed through simple coating work. Comp. ¶ 44. Despite Defendants' knowledge of the inherent problems with the vessels and knowledge that they cannot be adequately repaired, Defendants have attempted to repair and have represented to the buyers, including Plaintiffs, that the cracking can be repaired. Comp. ¶ 45. The coating repairs have proven to be unsuccessful and Plaintiffs have vessels that are unseaworthy and have lost all value as they cannot be sold. Comp. ¶ 46. Plaintiffs relied on Defendants' assurances and representations that the boats would be and could be repaired, thereby tolling the running of the applicable statutes of limitations. Comp. ¶ 47.

When Plaintiffs and members of the Class purchased MAKO 282 and 28 vessels, the same were accompanied by an express written warranty from Defendants. Comp. ¶ 20. The warranty from Defendants specifically stated that the vessels were "free from defects in material and workmanship" and from defects due to "substandard materials or workmanship." Comp. ¶ 21. If a defect in material or workmanship was found, the warranty provided that Defendants would provide an adequate repair or give credit toward the purchase of a new hull. Comp. ¶ 21.

At the time of the purchase, each of the Plaintiffs were aware of the "hull warranty" and relied upon the warranty when deciding to purchase the vessel. Comp. ¶¶ 23, 28, 32. In December of 2003, Plaintiff White noticed cracking in the hull and notified Tracker Retail to

determine whether the cracking was covered under warranty. Comp. ¶ 24.  Tracker Retail responded that he failed to properly transfer the warranty and furthermore that even if he had, the gel coat cracking was cosmetic and not covered under warranty.  Comp. ¶ 24.  Plaintiff White continued to use the boat based upon Tracker Retail's assurance that the cracking was cosmetic rather than structural.  Comp. ¶ 25.  In 2006, he was informed of the recall and further informed that the cracks, which had gotten worst, were covered under the recall.  Comp. ¶ 25.  After several repairs and simple gel coat work, the cracks returned even more severe after several days of fishing. Comp. ¶ 26.  Plaintiff White has been unsuccessful in several attempts to sell the vessel due to the defect.  Comp. ¶ 26.  Plaintiff Gish noticed cracking in the transom as early as 2007.  Comp. ¶ 29.  Plaintiff Gish had the hull and transom repaired by MAKO authorized repairs on at least three separate occasions.  Comp. ¶ 30.  Plaintiff Borchardt first noticed cracks in the hull of his boat in 2006.  Comp. ¶ 33.  He discussed the hull cracks with a representative of Bass Pro Shops, who told him not to worry about it.  Comp. ¶ 34.  The cracks have rendered each of Plaintiffs' vessels unseaworthy and unmarketable.  Comp. ¶¶ 26, 31, 35.

       The Complaint asserts claims for breach of express warranty (count I), breach of implied warranty of merchantability (count II), violation of Florida Deceptive and Unfair Trade Practices Act (count III), and unjust enrichment (count IV).  Defendant moves to dismiss the Complaint and/or for a more definite statement, arguing that (1) the express warranty claim fails to provide the particular express warranty upon which the claim is based; (2) the breach of implied warranty claim fails for lack of privity of contract; (3) Plaintiffs have failed to allege sufficient facts to support a FDUPTA claim; (4) the unjust enrichment claim should be dismissed since Plaintiffs have an adequate remedy at law; and (5) Plaintiffs claims against Defendants Tracker Retail,

4

TMBC, Tracker Marine, Bass Pro Show, and American Sportsman are not supported by the allegations in the Complaint. The Court will address each of these arguments in turn.[1]

**Standard of Review**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Sams v. United Food and Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir.

---

[1] Defendants also argue in their motion to dismiss that this action should be pled as an action under admiralty jurisdiction rather than as a diversity action. The Court cannot address this issue until it is able to understand more clearly Plaintiffs' allegations of breach of express warranty. See infra.

1989).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965. Plaintiff must plead enough facts to state a plausible basis for the claim. Id.

**Discussion**

Breach of express warranty (count I)

Defendants move to dismiss and/or for a more definite statement regarding the breach of express warranty claim, arguing that it fails to provide the particular express warranty upon which the claim is based. Regarding the alleged express warranty, the Complaint states as follows:

Defendants expressly warranted that the Mako 282 and 28 boats were fit for fishing and were seaworthy, durable, and safe. Comp. ¶ 65. Specifically, Defendants affirmed in writing that the hull was "free from structural defects due to substandard material and workmanship, under normal use." Comp. ¶ 66. Furthermore, Defendants warranted in owner's manuals, labels, product brochures, catalogues and otherwise held themselves out to Plaintiffs and the public through consistent marketing campaigns, advertisements, and models, that the boats were seaworthy, durable, and safe. Comp. ¶ 67. The expressed warranty that the Mako 282 and 28 were seaworthy and free from "structural defects due to substandard material and workmanship" was part of the basis of the bargain for each Plaintiff (or was otherwise reasonably relied upon)

when purchasing the vessel.  Comp. ¶ 68.

Plaintiffs' allegations of the express warranty are too vague to meet the pleading requirements set forth above.  Plaintiffs allege language and terms of express warranties, but fail to cite when and where those warranties were expressed.  While Plaintiffs allege an array of potential sources for express warranties, they fail to cite what language and terms those express warranties provided.  Additionally, Plaintiffs further confuse their claim for breach of express warranty by their allegation that "Plaintiffs relied to their detriment on Defendants' assurances and representations that the boats would be repaired, thereby tolling the running of the applicable statutes of limitations."  Comp. ¶ 72.  This allegation suggests that Plaintiffs are claiming that an additional express warranty arose after the sales.  Again, Plaintiffs fail to cite with specificity where the warranty was expressed and to state its precise terms.  Thus, it is unclear whether there is one or multiple express warranties.  It is also unclear whether the express warranty arose at the time of the original sale of the vessel, or at a later time.  Accordingly, the Court grants Defendants' motion to require Plaintiffs to amend this count to allege with greater specificity the express warranty or warranties upon which their claim relies.

Breach of implied warranty of merchantability (count II)

Defendants move to dismiss the breach of implied warranty claim, arguing that it fails for lack of privity of contract.  Under Florida law, privity is required in order to bring a cause of action for breach of implied warranty against a manufacturer.  See Ocana v. Ford Motor Co., 992 So.2d 319, 325 (Fla. 3d DCA 2008), citing Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla.1988); Weiss v. Johansen, 898 So.2d 1009 (Fla. 4th DCA 2005); Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So.2d 968 (Fla. 5th DCA 1994).  A cause of action for breach of implied warranty cannot stand absent contractual privity. Davis v.

7

Ford Motor Co., 2007 WL 2208810, *2 (S.D. Fla. 2007); T.W.M. v. American Medical Systems, Inc., 886 F.Supp. 842, 844 (N.D. Fla. 1995).  See also Rentas v. DaimlerChrysler Corp., 936 So.2d 747, 751 (Fla. 4th DCA 2006) (holding that lack of privity between buyers and manufacturer precluded claim for breach of implied warranty); Brophy v. DaimlerChrysler Corp., 932 So.2d 272, 275 (Fla. 2d DCA 2005) (affirming dismissal of claim for implied warranty because complaint "did not allege the requisite privity of contract").

In this case, all three Plaintiffs purchased their Mako vessels used from a third party non-defendant or an from an unidentified individual or entity. See Comp. ¶¶ 1, 2, 3, 22, 27, 32.  There is no allegation in the Complaint to establish that there is privity of contract between any Plaintiff and Defendant. See T.W.M., 886 F.Supp. at 844 (a plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant); accord Mcateer v. Black & Decker (U.S.) Inc.,, 1999 WL 33836701, *3 (M.D. Fla. 1999); Yvon v. Baja Marine Corp., 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007).  Accordingly, Plaintiffs' breach of implied warranty of merchantability claim (count II) is dismissed, with leave to amend to allege privity, if Plaintiffs can do so in good faith.

Violation of Florida Deceptive and Unfair Trade Practices Act (count III)

Defendants move to dismiss Plaintiff's FDUTPA claim, arguing that Plaintiffs have failed to allege sufficient facts to support such a claim.  The FDUTPA is designed to protect consumers from "unconscionable, deceptive, or unfair acts or practices" of trade and commerce. Fla. Stat. § 501.202(2).  The FDUTPA declares unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).  "Although not specifically identified in the statute, there are three elements that are required to be alleged to establish a claim pursuant to the

FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." <u>KC Leisure, Inc. v. Haber</u>, 972 So.2d 1069, 1073 (Fla. 5th DCA 2008).

Defendant's deceptive and unfair conduct allegedly included the following: Defendant "knowingly and falsely representing that Mako 282 and 28 vessels were fit to be used for the purpose for which they were intended, when Defendants knew it was defective, dangerous, ineffective, unsafe and by other acts alleged herein." Comp. ¶ 88. Thus, Plaintiffs allege that Defendants knowingly made false misrepresentations regarding the fitness of the vessels with knowledge that the vessels were in fact unfit and dangerous. Plaintiffs have adequately alleged a deceptive act under FDUTPA. Plaintiffs have also sufficiently alleged causation and damages. <u>See</u> Comp. ¶¶ 89, 91. Accordingly, Defendants' motion to dismiss is denied as to the FDUTPA claim.

<u>Unjust enrichment (count IV)</u>

Defendants move to dismiss the unjust enrichment claim, arguing that it should be dismissed since Plaintiffs have an adequate remedy at law. Defendants argue that a claim for breach of warranty and a claim for unjust enrichment cannot be based on the same breach.

Defendants' argument ignores the basic tenet of alternative pleading under the Federal Rules of Civil Procedure. <u>See</u> Fed.R.Civ.P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); <u>Sierra Equity Group, Inc. v. White Oak Equity Partners</u>, LLC, 2009 WL 901500, *12 (S.D. Fla. 2009); <u>Manicini Enterprises, Inc. v. American Exp. Co.</u>, 236 F.R.D. 695, 698-99 (S.D. Fla. 2006). While Plaintiffs can only recover once for the same actual damages, regardless of the number of alternative theories presented, they are not barred against pleading

9

unjust enrichment simply because they also plead breach of warranties.  "Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature." Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla. 5th DCA 1998). Accordingly, Defendants' motion to dismiss is denied as to the unjust enrichment claim.

Allegations against Defendants other than Mako Marine

Lastly, Defendants move to dismiss all of Plaintiffs claims against Defendants Tracker Retail, TMBC, Tracker Marine, Bass Pro Shops, and American Sportsman, arguing that they are not supported by the allegations in the Complaint.

Under Florida law, a party may pierce the corporate veil and hold a parent corporation liable for its subsidiary's actions if it can demonstrate first, "that the subsidiary was a 'mere instrumentality' of the parent," and second, "that the parent engaged in 'improper conduct' through its organization or use of the subsidiary." SEB S.A. v. Sunbeam Corp., 148 Fed.Appx. 774, 800 (11th Cir. 2005), quoting Johnson Enters. of Jacksonville, Inc., 162 F.3d at 1320, citing Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1117-21 (Fla.1984).  A parent has engaged in the requisite " 'improper conduct' " only where " 'the corporation was a mere device or sham to accomplish some ulterior purpose ... or where the purpose is to evade some statute or to accomplish fraud or illegal purpose.' " Id. (citations omitted).

In support of naming the five additional Defendants in this action, Plaintiffs have alleged several facts presumably directed toward piercing Defendants' corporate veils.  These allegations are as follows:

> Each Defendant was in the business of manufacturing, marketing, supplying, distributing, repairing, and introducing into the stream of Florida state and interstate commerce, directly or indirectly through related entities and/or third parties and/or agents, MAKO 282 and 28 offshore fishing vessels. Comp. ¶ 16.

Case 0:08-cv-61199-KAM   Document 64   Entered on FLSD Docket 11/17/2009   Page 11 of 12

>  There existed a unity of interest in ownership between Defendants such that there is no individuality or separateness between them as it relates to the Mako 282 or 28. These Defendants are alter egos of one another and exert control over each other. They shared officers and made all decisions with respect to the Mako 282 and 28 with a uniform voice. Adherence to the fiction of a separate existence between Defendants as entities distinct from one another would permit an abuse of corporate privilege and promote injustice. Comp. ¶ 10.
>
>  The defendants acted in concert with respect to the conduct described herein. Defendants in this matter are numerous and have implemented a complex structure of corporations and LLCs with each entity having responsibility for the manufacturing, selling, marketing and distributing of the MAKO 282 and 28. Furthermore, if any one entity is the subsidiary of another, the parent entity is responsible for the actions of the subsidiary entity based on but not limited to the theories of Principal/Agent, Contractor/Subcontractor, Employer/Employee and/or Respondeat Superior. Comp. ¶ 11.

The Court finds Plaintiffs conclusory allegations have not alleged sufficient information to pierce the corporate veils of any of the other five named Defendants, nor do they adequately set forth allegations to support any claim that any of the Defendants is the alter ego of another. Accordingly, the Court will dismiss Plaintiffs' claims against Defendants Tracker Retail, TMBC, Tracker Marine, Bass Pro Shops, and American Sportsman without prejudice, with leave to amend.

Conclusion

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (DE 48) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' motion for more definite statement regarding the breach of express warranty claim (count I) is GRANTED. Plaintiffs shall amend this count to allege with greater specificity the express warranty or warranties upon which they rely.

2. Defendants' motion to dismiss the breach of implied warranty of merchantability (count II) is GRANTED. Count II is dismissed with leave to amend to allege privity, if Plaintiffs

11

can do so in good faith.

3. Defendants' motion to dismiss the FDUTPA (count III) is DENIED.

4. Defendants' motion to dismiss the unjust enrichment claim (count IV) is DENIED.

5. Plaintiffs' claims against Defendants Tracker Retail, TMBC, Tracker Marine, Bass Pro Shops, and American Sportsman are DISMISSED without prejudice, with leave to amend in accordance with this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 17th day of November, 2009.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record